UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| OXFORD ROUND TABLE, INC. | PLAINTIFF |
|---|---|
| v. | CIVIL ACTION NO: 3:07CV-330-R |
| SLOAN MAHONE | DEFENDANT |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

Defendant, Dr. Sloan Mahone, by and though counsel, appears specially in this cause for the purpose of challenging jurisdiction, and files this Memorandum in Support of her motion to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(2) for lack of jurisdiction. Dr. Mahone, by and through counsel, states as follows:

## STATEMENT OF FACTS

Although the plaintiff's Complaint ("Comp.") provides a short statement of the facts, defendant would furnish additional information.

On or about December 13, 2006, Dr. Mahone posted a message on the website "Chronicle of Higher Education." Portions of that website are attached as Defendant's Exhibit 2 to this Memorandum. Dr. Mahone started neither the website, nor the thread of messages regarding Oxford Round Table, Inc. ("Plaintiff"). Although she posted some messages regarding the plaintiff, her messages stated her personal belief. Dr. Mahone's post was the tenth post in the thread, coming close to a month after the first post. Previous posts on the website used language to describe plaintiff's operation, such as "scam," "very suspicious," and "bogus." In addition, Dr. Mahone was not the most frequent poster on the website. In fact, another user posted two times as many messages regarding plaintiff. None of Dr. Mahone's posting were directed to Kentucky

1

or to any person or entity in Kentucky. (See Dr. Mahone's affidavit attached hereto as Exhibit 1.)

Dr. Mahone sent one email message to Dr. Anne George. Dr. George does not live or work in Kentucky but is a professor at St. Xavier University in Chicago, IL.. Despite what plaintiff has alleged Dr. Mahone never wrote that there was a danger in participating in plaintiff's program. Instead Dr. Mahone wrote, "Prompted by a number of US based colleagues who have received [plaintiff's] mailings, there is now some impetus underway to force the [plaintiff] to be much more upfront in their [sic] advertisements…one danger being, of course, that junior academics might include a paper given at 'Oxford University' within their tenure portfolio."

Plaintiff further complains that Dr. Mahone contacted the Principal of Harris Manchester College in the University of Oxford to disparage the plaintiff's business…(Complaint paragraph 43) The communications between Dr. Mahone and the Principal of Harris Manchester College are attached hereto as Exhibit 3.

On or about June 25, 2007 plaintiff filed its Complaint against Dr. Mahone. In that complaint, plaintiff specifically asserted three causes of action: (1) tortious interference with an existing contractual relationship; (2) tortious interference with a prospective contractual advantage; and (3) defamation. Plaintiff seeks a judgment against Dr. Mahone in excess of $75,000 and an injunction enjoining Dr. Mahone from commenting in any medium regarding plaintiff forever.

In paragraph 4 of Its complaint the plaintiff asserts that "this District is the proper venue for this action pursuant to 28 U.S.C § 1391(a) & (b) as Jefferson County, Kentucky is the place in the United States of America where this claim arose." (Plaintiff's Complaint, paragraph 4)

Dr. Mahone was served in England. Dr. Mahone has filed a Motion objecting to this Court's lack of personal jurisdiction because she has done nothing to submit herself to jurisdiction, and an assertion of jurisdiction over her would offend the Due Process Clause of the Fourteenth Amendment and infringe her First Amendment rights.

**ARGUMENT**

**I.     DISMISSAL IS REQUIRED UNDER FED. R. CIV. P. 12(b)(2)**

To determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment. *CompuServe, Incorporated v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996). Therefore, a defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Fourteenth Amendment must be met. *CompuServe, Incorporated v. Patterson,* 89 F.3d 1257 (6th Cir., 1996) and *Reynolds v. International Amateur Athletic*, 23 F.3d 1110 (6th Cir. 1994)

**A.     Plaintiff Is Unable to Establish that Dr. Mahone Had Sufficient Minimum Contacts With the Forum State.**

**Kentucky has adopted a three-prong test to determine whether the exercise of personal jurisdiction over a defendant violates due process. "The first prong of the test asks whether the defendant purposefully availed himself of the privilege of acting within the forum state or causing a consequence in the forum state. The second prong considers whether the cause of action arises from the alleged in-state activities. The final prong requires such connections to the state as to make jurisdiction reasonable."** *Powers v. Park*, 192 S.W.3d 439, 442 (Ky.App.Ct. 2006). This test is similar to federal case law on this point, *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110 (6th Cir., 1994)

In the *Reynolds* case, the Appellate Court reversed the trial court's imposition of jurisdiction over the International Amateur Athletic Federation (IAAF). Reynolds was an athlete who had ran a race in Monaco and flunked a drug test. The IAAF issued a press release announcing the Reynolds drug test results and went on to say that he had been suspended from competition for a period of time. *Reynolds* brought suit in the Southern District of Ohio claiming that the IAAF conduct cost him several millions of dollars in endorsements which he would have received. The district court held that the Ohio court had jurisdiction over the English based IAAF based on its conclusion that the injury to Reynolds was in Ohio. The Appellate Court reversed and held that:

> In short, the IAAF is based in England, owns no property and transacts no business in Ohio, and does not supervise U.S. athletes in Ohio or elsewhere. Its contacts with Reynolds in Ohio are superficial, and are insufficient to create the requisite minimum contacts for personal jurisdiction. Even if the IAAF purposefully availed itself of Ohio privileges, the claims against the IAAF must arise out of the IAAF's activities in Ohio…
> All of the activities relied upon by the district court as taking place in Ohio occurred after the activities in Europe upon which Reynolds bases his contract claims.(*Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110 (6th Cir.1994)

In this case, Dr. Mahone is located in England, and almost every activity complained of by the plaintiff took place in England. Dr. Mahone's letters to the head of Harris Manchester College were sent and received in England. (See Plaintiff's Exhibit 3) Dr. Mahone's email to Dr. Ann George was sent to Illinois (See Dr. Mahone's Affidavit, Defendant's Exhibit 2, paragraph 12). The only communications that plaintiff can claim has any contact at all with Kentucky are the internet postings on the Chronicle of Higher Education contained in defendants' Exhibit 2. These postings are not the sort of purposeful availment of Kentucky's jurisdiction which could impose personal jurisdiction on the defendant.

The question of what type of internet exchanges will subject a defendant to personal jurisdiction was addressed in the oft-cited case of *Zippo Manufacturing Company v. Zippo Dot Com, Inc.,* 952 F.Supp.1119 (W.D.PA., 1997). *Zippo* held that the defendant's conduct, which involved contracts with 3000 individuals and 7 internet access providers in Pennsylvania, was sufficient to subject the defendant to the Pennsylvania court's jurisdiction. Before reaching that conclusion the *Zippo* court set out its sliding scale analysis:

> "Nevertheless, our review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g. CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g. Bensusan Restaurant Corp., v. King,* 937 F.Supp. 295 (S.D.N.Y.1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996). (Emphasis added.) (*Zippo Manufacturing Company v. Zippo Dot Com, Inc.,* 952 F.Supp.1119 at 1124)

Defendant would contend that her posting on the internet probably comes closer to the passive website, which does little more than make information available, but even assuming that they are part of an interactive website, it should be noted that the *Zippo* test suggests that the exercise of jurisdiction should be determined by the level of interactivity and the commercial nature of the exchange of information. The Chronicle of Higher Education is a website utilized by academicians. There is little commercial activity involved in the Chronicles. As can be seen from the discussion of the portion of the Chronicles that concern the plaintiff in this case, the participants are more interested in exchanging advice to one another about the legitimacy of the plaintiff's activities. It is certainly not a commercial activity. In addition, there is absolutely nothing that suggests that Dr. Mahone directed the postings to the state of Kentucky as a focal point.

This latter point is of significance because it has been held that, if internet activity is alleged to constitute the basis of jurisdiction, the plaintiff must establish the elements of the effects of test set forth in *Calder v. Jones,* 465 U.S 783, 104 S.Ct 1482, 79 L.Ed 2d 804 (1984), (cited in *Mark Hanby Ministries, Inc. v. Lubet,* 2007 WL 1004169). The *Hanby Ministries* case goes on to cite the elements of the *Calder* "effects" test:

> (1) the defendant must commit an intentional tort;
> (2) the plaintiff must feel the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by plaintiff as a result of the tort; and,
> (3) the defendant must expressly aim his or her tortious conduct at the forum such that <u>the forum can be said to be the focal point of the tortious activity</u>.
> In order to satisfy the "effects" test, there must be proof the alleged tortious conduct was <u>expressly aimed at the forum state</u>. *Machulsky,* 210 F.Supp.2d at 541.(Quoted from *Hanby Ministries v. Luebt,* 2007 WL 1004169)

An examination of the *Calder* "effects" reveals that for purposes of this motion neither number two nor number come even close to being fulfilled. The only allegation in plaintiff's complaint that mentions Kentucky is paragraph 4 in support of its venue choice, and there are no facts which support the conclusions contained in that paragraph. The plaintiff must demonstrate that the forum is the focal point of the harm suffered by the plaintiff. The conclusionary statements of paragraph 4 of the complaint, even when combined with everything else in the complaint, furnish the court with nothing which would suggest that Kentucky is the focal point of any harm suffered by plaintiff. As is apparent, the *Calder* court views the "effects" of the claimed tort from both the plaintiff's and the defendant's stand points. As has already been indicated, the focal point from the plaintiff's viewpoint is not Kentucky. Turning to the defendant's viewpoint, the third *Calder* "effect", requires that the defendant must expressly aim his or her tortious conduct so that the forum can be said to the focal point of the tortious activity. Again, this case fails that test. All conduct complained of occurred in England with the possible exception of one email to Illinois. The only conduct complained of that the plaintiff can claim has any contact with Kentucky are the posting on the internet. There is no way that the plaintiff can legitimately claim that those postings were focused on Kentucky. In point of fact, the opposite is more clearly true. The website is used by those in academia to exchange opinions, as was done in this case. There was no focus on Kentucky by any of the expressions listed in the Chronicles, and certainly no focus on Kentucky by anything posted by Dr. Mahone. Therefore, this case does not meet the tests of *Calder* and this court should decline to exercise jurisdiction over the defendant.

Defendant would next refer the court to the case of *Revell v. Lidov,* 317 F.3d 467, (5th Cir. 2002). Although *Revell* is a Fifth Circuit case it is submitted for two reasons. First it contains a good discussion of jurisdiction in the context of an internet posting. Second, it states that it finds instructive and in fact, discusses in some length, the Sixth Circuit case of *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110 (6th Cir, 1994).

*Revell,* involved an article that was posted on an internet bulletin board at Columbia University. Lidov was an assistant professor at Harvard and wrote an article on the terrorist bombing of Pan Am Flight 103 in which he contended that the government covered up the fact that it had advance warning of the attack. The article specifically mentioned Mr. Revell who was Associate Deputy Director of the FBI. The article accused Revell of conspiracy and cover up and made the statement that his son, who had been booked on Pan Am 103, took a different flight. Revell sued Lidov in Texas. The District Court allowed the defendant's Motion to dismiss for lack of jurisdiction, and the Fifth Circuit affirmed. Although the District Court held the Columbia University bulletin board was passive under the *Zippo* test and did not create for specific jurisdiction, the appellate court disagreed. After concluding that the Columbia bulletin board was in fact interactive, the Court proceeded to evaluate the extent of its interactivity. It also addressed Revell's argument that the defendant was subject to Texas' jurisdiction under the holding of *Calder*.

The *Revell* court distinguished *Calder* in the following language:

> First, the article written by Lidov about Revell contains no reference to Texas, nor does it refer to the Texas activities of Revell, and it was not directed at Texas readers as distinguished from readers in other states. Texas was not the focal point of the article or the harm suffered, unlike *Calder,* in which the article contained descriptions of the California activities of the plaintiff, drew upon California sources, and found its largest audience in California. This conclusion fits well with our decisions in other intentional tort cases where the plaintiff relied upon *Calder*. <u>In those cases we stated that the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*.</u> We also find instructive the defamation decisions of the Sixth, Third, and Fourth Circuits in *Reynolds v. International Amateur Athletic Federation, Remick v. Manfredy,* and *Young v. New Haven Advocate,* respectively.[Emphasis added.] (*Revell v. Lidov,* 317 F.3d 467 at 473.

As was previously indicated the only allegation in plaintiff's complaint which relates to Kentucky is the conclusionary language in paragraph 4. As *Revell* clearly holds, the plaintiff's residence in the forum and the fact that the plaintiff may have suffered some harm there are not enough to confer jurisdiction. The defendant will also offer the further statement which connects *Revell* more closely with the Sixth Circuit. *Revell* agreed with the Sixth Circuit case of *Reynolds* in the following language:

> We agree with the *Reynolds* court that the sources relied upon and activities
> described in an allegedly defamatory publication should in some way connect
> with the forum if *Calder* is to be invoked. Lidov's article, insofar as it relates to
> Revell, deals exclusively with his actions as Associate Deputy Director of the
> FBI-just as the offending press release in *Reynolds* dealt only with a failed drug
> test in Monaco. It signifies that there is no reference to Texas in the article or any
> reliance on Texas sources. These facts weigh heavily against finding the requisite
> minimum contacts in this case.*Revell,* 317 F.3d 467 at 474.

Defendant submits one final quotation from R*evell* because it is also of importance to this case:

> Lidov's affidavit, uncontroverted by the record, states that he did not even know
> that Revell was a resident of Texas when he posted his article. <u>Knowledge of the
> particular forum in which a potential plaintiff will bear the brunt of the harm
> forms an essential part of the *Calder* test</u>. The defendant must be chargeable with
> knowledge of the forum at which his conduct is directed in order to reasonably
> anticipate being haled into court in that forum, as *Calder* itself and numerous
> cases from other circuits applying *Calder* confirm." [Emphasis added.] *Revell*,
> 317 F.3d 467 at 475.

As Dr. Mahone's affidavit indicates in paragraph 12, she did not have any knowledge of the residency location of the plaintiff in this case at the time any statements or postings were made by her. Therefore, under the authority of *Revell* the court should decline to exercise jurisdiction over her.

In determining whether or not Dr. Mahone's contact with the forum state constituted purposeful availment, the Sixth Circuit imposes the *Zippo* sliding scale approach which distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site. If a web-site is semi-interactive, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange.

In the present case, there is no personal jurisdiction over Dr. Mahone. Dr. Mahone participated in online communications hoping to warn others against what she believed were plaintiff's misleading activities. On this website, Dr. Mahone referred to plaintiff's activities in

8

the United Kingdom, not Kentucky. Dr. Mahone neither targeted Kentucky, nor did she direct her messages at Kentucky or to Kentucky residents.

In the present case, Dr. Mahone sent an email to Dr. Ann George but it went to Illinois, not Kentucky. Since in previous cases the Sixth Circuit has held that personal jurisdiction does not exist if a single email is sent to a resident of the forum state, the Court should hold in the present case when the email is sent, not to a resident of the forum state, but a bordering one, personal jurisdiction also does not exist.

When plaintiff fails to establish that a defendant's contacts with the forum state result from actions by the defendant that create a substantial connection with the forum state and would cause a defendant to reasonably anticipate being haled into court in the forum state, then personal jurisdiction cannot be said to exist, and the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985).

To bring the case closer to home the defendant would refer the Court to *Static Control Components, Inc. v. Lexmark International, Inc.* 2005 WL 2009273 (E.D. Ky.). In *Static Control* the Eastern District of Kentucky refused to exercise jurisdiction over the defendant which had maintained a website for its customers, an activity which the plaintiff claimed subjected the defendant to Kentucky jurisdiction. The Court refused to accept this argument. The Court concluded that the Sixth Circuit's test was the appropriate one to use in that the Court held that: "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant's or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the Defendant reasonable," citing *Southern Machinery Co. v. Mohasco Industries, Inc.* 401 F.2d 374, 381 (6th Cir. 1968). The most important element in determining personal jurisdiction is the determination of whether or not the defendant purposefully availed herself of the privilege of conducting activities within the forum state because a defendant should not be haled into a jurisdiction "solely as a result of random, fortuitous, or attenuated contract, or of the unilateral activity of another party or third person." Citing *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 529

(1985). The postings by Dr. Mahone were clearly not any sort of purposeful availing on her part of the Kentucky courts. As has been indicated earlier, the postings were done in Oxford, and her emails went only to England and Illinois.

The Eastern District of Kentucky in *Static Control Components* examines Sixth Circuit cases for assistance in making its determination. The Court pointed out that

> "The Sixth Circuit has stated that the operation of 'a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction', even where the website enables the defendant to do business with residents of the forum state because such activity does not 'approximate [] physical presence within the state's border' *Bird v. Parsons,* 289 F.3d 865 (6th Cir. 2002). Instead, operation of a website may constitute the purposeful availment of the privilege of acting in a forum state 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state' *Neogen Corp. v. Neo Gen Screening, Inc.* 282 F.3d 883, 890 (6th Cir. 2002). [Referred to and quoted from *Static Control Components* 2005 W.L. 2009273.

After reviewing the above cases and other Sixth Circuit cases on this point, the District Court concluded that "Although IPW's website might be considered somewhat interactive, it appears that it is not interactive to a degree that reveals it specifically intended interaction with the residents of Kentucky. Thus, the Court concludes that IPW's website does not show an intention by IPW to purposefully avail itself of the privilege of conducting activities within Kentucky." *Static Controlled Components* 2005 W.L. 2009273.

Based on its analysis of the facts, and of the Sixth Circuit cases the Eastern District of Kentucky determined that there had been no purposeful availment of the privilege of conducting activities within Kentucky and that therefore the first prong report of the three-part test for personal jurisdiction failed. In addition to the earlier cited cases Defendant would also refer the Court to *Kerry Steel, Inc. v. Paragon Industries, Inc.* 106 F.3d 147 (6th Cir. 1997) and *Calphalon Corp. v. Rowlette* 228 F.3d 718 (6th Cir. 2000). Both of these cases held that there were insufficient minimum contacts with the respective states involved to enable the Courts to exercise jurisdiction over the defendants.

Defendant would make one further practical point before concluding. Although, as was noted earlier, the Kentucky long arm statute has been construed as extending the jurisdiction of the Kentucky courts to the extent allowed by the federal Due Process Clause, the defendant would point out that several recent Kentucky Supreme Court cases have not viewed attempted extensions of the jurisdiction of the Kentucky court system too favorably. For example, in <u>Powers v. Park</u>, 192 S.W.3rd 439 (Ky.App.2006) the appellate court rejected the plaintiff's attempt to subject a doctor to the jurisdiction of the Kentucky court and stated that, "In order for the court to exercise specific jurisdiction on the basis of a single act, that act must take place within the Commonwealth. If the act

occurred outside the Commonwealth and then caused consequences within the Commonwealth, more is required if the exercise of jurisdiction is to comport with due process." *Powers*, 192 S.W.2d 3rd 439 at 443.

The Supreme Court of Kentucky reached a similar conclusion in *National Grange Mutual Insurance Company v. White*, 83 S.W.2d 3rd 530 (Sup. Ct. 2002) and in *Wilson v. Case*, 85 S.W.3d 589 (Sup. Ct. 2002). In the latter case, which involved a pilot who was personally sued in Kentucky after flying a plane from Kentucky to Maryland where it crashed, the Supreme Court upheld a trial court's dismissal of the claim for lack of personal jurisdiction. It is this case which the defendant submits for her the practical consideration argument. The Supreme Court of Kentucky held that, "the financial strain and time commitment required to defend a lawsuit in Kentucky would constitute an extreme burden on Case, one which this Court is not willing to impose. We do not propose that non-corporate, nonresident Defendants can never be haled into Kentucky courts. Rather, we find on the facts of this case that assertion of jurisdiction would offend the guarantees of fairness and justice extended by the Constitution." *Wilson*, 85 S.W.2nd 589 at 597. Defendant would assert that in addition to the due process and first amendment concerns raised earlier, the practical consideration alluded to by the Kentucky Supreme Court should play a part in this court's analysis. To require a defendant who resides in England to defend a case in Kentucky under the circumstances involved in this case would be an undue burden and would offend both the Due Process Clause and the first amendment rights of the defendant.

## **CONCLUSION**

In summary, the defendant submits that all of her activity was in England. There were two e-mails to an individual affiliated with Harris Manchester College in England and one e-mail to Dr. George in Illinois. There was no direct communication with anyone in Kentucky. The postings made by the defendant on the Chronicles of Higher Education website were, at the most, interactive in nature. The cases submitted by the defendant clearly indicate that those activities should not subject her to jurisdiction of the Kentucky Courts.

There was no purposeful availment by Dr. Mahone by her posting on the website. There was no focus on Kentucky or anyone in Kentucky. As a matter of fact, and as set forth in Dr. Mahone's affidavit at paragraph 12, she was not even aware of any Kentucky connection that the plaintiff might have. Finally, there is not even any allegation in plaintiff's complaint that would suggest that there was any damage done by any communication of the defendant that occurred in Kentucky.

The defendant would submit that academics should be encouraged to speak openly in academic fora when matters they believe are questionable or wrongful come to their attention. Academic personnel should not be fearful of communicating those matters to their fellow academicians. To subject the defendant, a citizen of this country presently residing in England and working in England, to the jurisdiction of Kentucky under the facts of this case would violate the Due Process Clause of the Constitution and would be a severe threat to the defendant's First Amendment rights.

WHEREFORE the defendant, Sloan Mahone, prays for an Order of this Court dismissing the claim against her for lack of personal jurisdiction.

**Dated: July 30, 2007**          **Respectfully submitted,**

Charles W. Chapman
THE LAKIN LAW FIRM, P.C.
300 Evans Avenue
Post Office Box 229
Wood River, Illinois 62095-0229
618.254.1127 (t)
618.254.0193 (f)
(Pro Hac Vice Motion Pending)

**Counsel for Defendant**

BY: /s/ Rodger W. Lofton
Rodger W. Lofton
928 Broadway
Post Office Box 1737
Paducah, Kentucky 42002-1737
270.444.9999 (t)
270.444.0036 (f)

**Local Counsel for Defendant**